Albert N. BLANKENSHIP et al.,
Plaintiffs in Error,

v.

BOARD OF REVIEW, OKLAHOMA EM-
PLOYMENT SECURITY COMMIS-
SION, et al., Defendants in Error.

No. 42811.

Supreme Court of Oklahoma.

July 6, 1971.

K. D. Bailey, Okmulgee, for plaintiffs in error.

Floyd L. Rheam, David L. Noss, Tulsa, for defendant in error, Ball Brothers Company, Inc.

Milton R. Elliott, Oklahoma City, for defendants in error, Board of Review and Oklahoma Employment Security Commission.

IRWIN, Justice:

Albert N. Blankenship and 33 others (claimants) sought unemployment benefits under the Oklahoma Employment Security Act (40 O.S.1961 § 211 et seq.). The matter was submitted first to a Referee who found that claimants had voluntarily ceased work because of a labor dispute at employer's (Ball Brothers Company) premises; that they voluntarily remained out of work because of the labor dispute; and that they were not eligible for unemployment benefits.

The Board of Review made findings of fact and conclusions of law and affirmed the decision of the Referee. On appeal to the district court, that court affirmed the findings and conclusions of the Board of Review. Claimants have appealed.

Claimants are all employees of Ball Brothers and, except for one, are members of Local Union No. 74. Local Union No.

88, whose members are also employees of Ball Brothers, was negotiating for a new contract, Local No. 74 had a contract with this employer, which was in full force and effect. Local No. 88 called a strike and established a picket line, which claimants refused to cross. This labor dispute was subsequently settled. Claimants sought unemployment benefits on the grounds that they were unemployed through no fault of their own (involuntarily unemployed) during the period of the strike.

The Legislature declared the public policy of this State concerning unemployment by providing in 40 O.S.1961 § 212 of the Oklahoma Employment Security Act, for the " * * * compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own". The primary issue is these proceedings is whether claimants were unemployed "through no fault of their own". Stated in another way, did claimants voluntarily or involuntarily become unemployed.

The Board of Review found that claimants, "by voluntarily leaving their employment without good cause connected with the work and by refusing to cross the picket line created by their fellow workers of another union, made the dispute of those others their own and actively participated in the labor dispute."

Claimants contend they did not voluntarily remain from their employment without good cause because they were not required to experience violence or bodily harm in attempting to cross the picket line of Local Union No. 88, to return to work.

■ In Aero Design & Engineering Co. v. Board of Review, Okl., 356 P.2d 344 (1960), we considered the eligibility of striking members to receive unemployment benefits and held:

"An individual who ceased work by reason of a labor dispute or strike against his employer is ineligible for benefits under the Oklahoma Employment Security Act so long as he participates in such dispute and voluntarily remains out of employment by reason thereof."

The above case involved employees of Aero who ceased work and left the plant of Aero in protest over the failure or inability of their collective bargaining agent to negotiate a labor contract. In the instant proceeding, claimants did not return to work because another labor union was on strike and they refused to cross the picket line. Whether claimants here refused to return to work because of a labor dispute or strike of their own union or that of another union, the fact remains that they did not return to work because of a labor dispute or strike against their employer.

The facts in this case are somewhat similar to those in Achenbach v. Review Board of Indiana, 242 Ind. 655, 179 N.E.2d 873 (1962), which involved members of a union who would not cross the picket lines of another union. The Court said that voluntary refusal of employees to cross picket lines maintained by members of a union to which they do not belong makes them participants in the labor dispute involved. In discussing "voluntary" and "involuntary" refusal to cross a picket line the court said that voluntary refusal "includes belief in union concepts and tenets; acquiescence in superior union officers advice; and actions in concert and support of a striking union". It said that involuntary refusal to cross a picket line "includes actual violence, or the threat of violence, or apparent observation of circumstances at the picket line or elsewhere which would induce a reasonable and genuine belief of violence occurring if a crossing was attempted". The court also said that it is not necessary that employees should experience actual violence or bodily harm in attempting to cross the picket lines, but their fear, in light of all the circumstances must be reasonable and genuine; and the fear of violence must be real and not nebulous or imaginary.

In Lanyon v. Administrator, Unemployment Compensation Act, 139 Conn. 20, 89 A. 2d 558, the court said that when an employee has the choice of crossing a picket line or refusing to do so because of his adherence to the written or unwritten law

of the union, his unemployment, if any, is voluntary. It also said that when prevailing conditions create in the employee a real and genuine fear that, in reasonable probability, he will suffer personal injury should he attempt to cross the picket line, his refusal for that reason will be deemed to be involuntary.

The case of Ashmead v. Florida Industrial Commission, Fla.App., 155 So.2d 801, also involved members of a union that refused to cross another union's picket lines. That court said that it has been uniformly recognized that the voluntary refusal to cross a peaceful picket line constitutes participating in a labor dispute, and by refusing to cross a picket line such persons add their strength to the cause of the strikers and thereby place the strikers in a better bargaining position. See also, In Re Persons Employed at St. Paul & Tacoma Lumber Co., 7 Wash.2d 580, 110 P.2d 877, (1941).

In Wilson v. Employment Security Commission of New Mexico, 74 N.M. 3, 389 P. 2d 855, that Court said:

"While we think the decisions generally agree that one who voluntarily refuses to cross a picket line to go to his work which is available to him participates in the labor dspute, it is equally well recognized that one who has reason to fear violence or bodily harm is not required to pass a picket line, nor is it necessary that a claimant, to be eligible for unemployment benefits, actually experience violence or bodily harm in an attempt to cross a picket line. A reasonable fear of harm or violence is sufficient. * * *."

■ We hold that it is not necessary for a non-striking employee to experience actual violence or bodily harm in attempting to cross a picket line for his refusal to be involuntary; and, in light of all the circumstances, if an employee has a real and genuine fear that, in reasonable probability, there will be violence or he will suffer bodily harm should he attempt to cross a picket line, his refusal for that reason will be deemed to be involuntary. If an em-

ployee refuses to cross a picket line because of his conscience and his desire to abide by the principles of union concepts and policies, his refusal for these reasons will be deemed to be voluntary.

■ We also hold that when a non-striking employee voluntarily refuses to cross a peaceful picket line created by his fellow employees of another union, such refusal constitutes active participation in the labor dispute.

■ Did claimants' refusal to cross the picket line of Local Union No. 88, constitute a voluntary or involuntary refusal? In considering this issue we must recognize the rule set forth in Carter v. Board of Review Under Oklahoma Employment Security Act, Okl., 323 P.2d 362, we held:

"In a proceeding to secure unemployment compensation benefits under the Oklahoma Employment Security Act, the burden of proof to establish claimant's rights to benefits rests upon claimant, and the findings of Board of Review as to facts, if supported by evidence and in absence of fraud, are conclusive, * *."

Fraud is not an issue in this case.

The Board of Review found that claimants failed to discharge their burden of establishing their failure to pursue their employment (to cross the picket line and return to work) was essentially attributable to a real or genuine fear to do so, rather than for the reasons of conscience and a desire to abide by the principles or policies of the union. In this connection, the Board of Review found that "all the witnesses admitted that office employees crossed the picket lines and worked, and others crossed to pay their insurance and that trucks and freight cars crossed the lines; further that there were no acts of violence; that the whole situation appeared to have a picnic atmosphere.

There is evidence that one of the reasons why claimants did not cross the picket lines was because they didn't believe in crossing picket lines; and had they crossed the picket lines they would have been throwing

the other union down the drain and they wouldn't do that. There was other evidence that the striking members were just milling around, visiting and horse playing; that there was a holiday or picnic spirit at all times; and that there was no mention of violence.

■ The burden was upon claimants to establish that their failure to return to work was involuntary. In our opinion, the evidence is sufficient to sustain the findings of the Board of Review, which was affirmed by the district court, that claimants failed to discharge their burden of establishing that their failure to cross the picket lines and return to their work was involuntary, or through no fault of their own.

Claimants also contend that under 40 O.S.1961 § 215(c) (2), unemployment benefits shall not be denied to any employee, *otherwise eligible*, for refusing to accept new work if the position offered is vacant due directly to a strike, lockout or other labor dispute. Claimants argue that if they had gone to work there would not have been any work for them to do other than new work; and that the plant was closed and the equipment secured.

The Board of Review found that claimants did not offer to return to work when work was available for them. In this connection claimants submitted evidence that the plant was closed and there would be no work if they did return. Ball Brothers, the employer, submitted evidence that the foreman was instructed that if anyone called about work he should tell them to come to work; that the time cards were still in the rack, and that work was available to them.

The circumstances in the case at bar are different from those presented to the New Mexico Court in Wilson v. Employment Security Commission, supra. Here, the claimants voluntarily remained away from work without good cause and are deemed to have participated in the labor dispute. There, the claimants neither voluntarily left work without good cause nor did they participate in the labor dispute. Here, the foreman was instructed that if anyone called, he should tell them to come to work and that work was available. There, the claimants were never advised that any work was available.

■ To be "otherwise eligible" for unemployment benefits within the purview of § 215(c) (2), supra, an employee must be unemployed involuntarily or unemployed through no fault of his own. We have already determined that claimants were not involuntarily unemployed or unemployed through no fault of their own. Claimants' argument that there would have been no work available had they returned to work is a conclusion since they did not attempt to return to work to ascertain what work was available. Claimants are not entitled to a determination by this Court, in view of the evidence and the findings by the Board of Review, that there would have been no work available on the grounds that the plant was not in production and the equipment was secured.

Judgment affirmed.

DAVISON, V. C. J., and WILLIAMS, BLACKBIRD, HODGES, LAVENDER and McINERNEY, JJ., concur.